**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-199-DLB**

**YUN QUI**                                                                    **PETITIONER**

**v.**                     **MEMORANDUM OPINION AND ORDER**

**JASON MAYDAK, et al.**                                          **RESPONDENTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.     INTRODUCTION

This matter is before the Court on Petitioner Yun Qui's Petition for Writ of Habeas Corpus (Doc. # 1). Respondents[1] having filed their Responses[2] (Docs. # 3 and 4) and Petitioner having filed his Reply (Doc. # 5), the matter is now ripe for the Court's review. For the following reasons, the Court will **deny** the Petition.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of China who entered the United States on or about November 14, 2024 near San Ysidro, California. (Doc. # 4-1). Upon arrival, Petitioner was detained by Customs and Border Patrol ("CBP") and was placed into expedited removal hearings. (Doc. # 4-1). On December 9, 2024, Petitioner was

---

[1]     Petitioner files this action against Samuel Olson, Chicago Field Office Director, U.S. Immigration and Customs Enforcement ("ICE"); Todd Blanche, Acting Attorney General; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); Todd Lyons, U.S. ICE (collectively, the "Federal Respondents"); and Jason Maydak, Jailer, Boone County Jail. (Doc. # 1 at 1).

[2]     Respondent Maydak filed a separate response, arguing that he is not Petitioner's immediate custodian. (Doc. # 3 at 2).

1

released on parole.[3]  (Doc. # 1-3).  The Interim Notice Authorizing Parole states that Petitioner's parole period was valid for one year.  (*Id.*).  However, Petitioner's I-213 Narrative merely states that he was released on interim parole pending an interview by an asylum officer.  (Doc. # 4-2 at 2).

On February 14, 2025, Petitioner filed a Form I-589 Application for Asylum.  (Doc. # 1-4).  On July 24, 2025, Petitioner filed a Form I-765 for Employment Authorization.  (Doc. # 1-2 at 1).  Petitioner's Employment Authorization application was denied on August 1, 2025.  (*Id.*).  On October 29, 2025, Petitioner received a Notice of Credible Fear Interview and was directed to report to the New York Asylum Office on November 6, 2025.  (Doc. # 1-5).  According to Petitioner, he appeared for his scheduled interview on November 6, 2025 and was re-detained by DHS on the same day.  (Doc. # 1 ¶ 27).  Petitioner's I-213 Narrative reiterates this story, indicating that he was arrested on November 6, 2025, pursuant to an I-200 Warrant for Arrest of Alien (Doc. # 4-3) at the New York Asylum Office.  (Doc. # 4-2 at 2).  Neither Petitioner nor Respondents were able to provide the Court with the outcome of the credible fear interview.  In fact, Respondents stated that they "assum[e] Petitioner was found to have a credible fear" but

---

[3]     Throughout the entirety of his Petition, Qui repeatedly states that he was released on his own recognizance.  (*See e.g.*, Doc. # 1 ¶ 36).  In fact, he goes so far to distinguish himself with others paroled into the country, saying that "individuals detained under § 1225(b) may not be released on their own recognizance; they may only be paroled into the country under § 1182(d)(5)(A)."  (*Id.*).  The Court finds it imperative to highlight that Petitioner *was not released on his own recognizance*.  Pursuant to the ICE Order of Release on Recognizance sample order, release on one's own recognizance may be issued to noncitizens pursuant to § 236 of the Immigration and Nationality Act ("INA"), which is codified at 8 U.S.C. § 1226.  *See* Immigration Customs and Enforcement, *Order of Release on Recognizance*, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf (last visited June 18, 2026).  Alternatively, ICE may grant humanitarian parole through § 212(d)(5)(A) of the INA, codified at 8 U.S.C. § 1182.  Pursuant to Petitioner's Interim Notice Authorizing Parole, he was granted parole "pursuant to [ICE's] authority under section 212(d)(5)(A) of the [INA]."  (Doc. # 1-3).  Accordingly, despite Petitioner's repeated attempts to classify himself as a noncitizen who was released on his own recognizance, Petitioner was granted entry to the country via humanitarian parole.

they have "not been able to obtain a document confirming this fact." (Doc. # 4 at 3 fn. 5). However, on June 22, 2026, Petitioner filed a *pro se* letter to the Court where he states that he was arrested "after [his] asylum interview on November 6, 2025" and that he "passed [his] asylum interview." (Doc. # 6 at 1). The Court understands Petitioner to mean that he was detained by ICE following his credible fear interview, in which the asylum officer determined that he had a credible fear.

On February 9, 2026, Petitioner received a Notice to Appear ("NTA") before an Immigration Judge ("IJ") on March 20, 2026. (Doc. # 1-2). One month later, on March 9, 2026, Petitioner appeared before IJ Ryan Thompson after requesting a custody redetermination hearing. (Doc. # 1-7 at 3). There, the IJ denied Petitioner's bond on the grounds that he is "an applicant for admission." (*Id.*). Neither party has indicated whether Petitioner's March 20, 2026 hearing took place as scheduled. However, a review of the Executive Office for Immigration Review's ("EOIR") Automated Case Information shows that Petitioner has an individual hearing on June 25, 2026, meaning Petitioner did, at some point, have a master calendar hearing. *See* EOIR, *Automated Case Information*, https://acis.eoir.justice.gov/en/caseInformation.

On May 4, 2026, Qui filed the instant Petition for Writ of Habeas Corpus (Doc. # 1). On May 6, 2026 the Court issued an order directing Respondents to respond to the Petition. (Doc. # 2). Respondents having filed their Responses (Docs. # 3 and 4), and Petitioner having filed his Reply (Doc. # 5), the matter is ripe for the Court's review.

## III.    ANALYSIS

Qui's Petition alleges that his present detention violates the Immigration and Nationality Act ("INA") and deprives him of his right to due process under the Fifth

3

Amendment and he is therefore entitled to immediate release.  (Doc. # 1 at 16).
Respondents argue that "this is not one of the 'usual' 1225/1226 cases on the habeas
docket" but rather, Petitioner is being detained pursuant to 8 U.S.C. § 1225(b)(1) because
he is in expedited removal.  (Doc. # 4 at 1).

### A.    Proper Respondents

Before turning to Petitioner's substantive argument, the Court will address
Respondent Maydak's contention that he is not a suitable respondent.  (Doc. # 3 at 2).
"[T]he federal habeas statute straightforwardly provides that the proper respondent to a
habeas petition is 'the person who has custody over the petitioner.'"  *Rumsfeld v. Padilla*,
542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242).  The Supreme Court has held that
"[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody
within the United States, he should name his warden as respondent and file the petition
in the district of confinement."  *Id.* at 447.  Similarly, this Court has held that, where an
immigration detainee files a petition for writ of habeas corpus, the jailer is a proper
respondent.  *M.T.B. v. Byers*, No. 2:24-cv-082-DCR, 2024 WL 3881843, at *1 (E.D. Ky.
Aug. 20, 2024).  Indeed, "as the person who has 'day-to-day control over the facility in
which [Qui's] is being detained,' Maydak is [Qui's] custodian."  *Id.* (quoting *Roman v.
Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003)).  Petitioner is presently detained at the
Boone County Jail.  (Doc. # 1 ¶ 13; Doc. # 3 at 1).  Maydak, as the elected Jailer,
"oversee[s] and operate[s]" the Boone County Jail.  (*Id.*).  Therefore, Maydak is a proper
respondent to Qui's Petition.  *See Padilla*, 542 U.S. at 447; *Byers*, 2024 WL 3881843, at
*1.  Accordingly, the Court will deny Maydak's request to dismiss him as a respondent.

Having concluded that Maydak is a proper respondent, the Court turns to the substantive arguments Petitioner raises in his Petition.

### B. Petitioner is mandatorily detained pursuant to § 1225(b)(1)(B)(ii)

Petitioner's argument that he is entitled to immediate release is seemingly based on two different theories: (1) his detention without prior notice of termination of his parole violates his due process rights; and (2) Petitioner is a class member of *Maldonado Bautista v. Santacruz*, --- F. Supp. 3d ---, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025) and therefore entitled to a bond hearing under § 1226(a).[4]  (Doc. # 1 ¶ 29, 46). Confusingly, Petitioner also argues that his "prolonged detention under § 1225(b) without any individualized assessment of the need for detention" deprives him of due process. (*Id*. ¶ 33).  To add to the confusion, Petitioner also asserts that his "current detention is pursuant to § 1225(a)(1)[.]"  (*Id*. ¶ 29).  So, it is unclear to the Court whether Petitioner believes he is being detained pursuant to § 1226(a), § 1225(a)(1), or § 1225(b).

For their part, Respondents argue Petitioner is detained pursuant to § 1225(b). Specifically, Respondents argue that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) because he was placed into expedited removal proceedings and then found by an asylum officer to have a credible fear of persecution.  (Doc. # 4 at 3).  In his Reply, Petitioner argues that a parole exception to § 1225(b)(1) applies to him.  (*See* Doc.

---

[4]     Petitioner additionally asserts claims under the Administrative Procedure Act ("APA"). (Doc. # 1 at 21-24).  The Court will not consider these claims.  To state a claim under the APA, "the Petitioner must show that there is 'no other adequate remedy in court.'" *Singh v. Noem*, No. 2:25-cv-157-SCM, 2026 WL 74558, at *7 (E.D. Ky. Jan. 9, 2026 (quoting *Haines v. Fed. Motor Carrier Safety Admin*, 814 F.3d 417, 427 (6th Cir. 2016; 5 U.S.C. 704).  "When a Petitioner is subject to detention under immigration statutes, habeas provides an adequate remedy, and thus APA review is not available.  *Choy v. Woosley*, No. 4:25-cv-197-DJH, 2026 WL 324601, at *6 (W.D. Ky. Feb. 6, 2026) (citing *Singh*, 2026 WL 74558, at *7).  Therefore, Petitioner's claims under the APA are **denied**.

# 5 at 4) ("Respondents' responses largely cited § 1225(b)(1) . . . as authority for indefinite mandatory detention of applications for admission in expedited removal proceedings but intentionally excluded the parole exception.").

### 1. *Relevant framework*

To implement its immigration policy, the Government "must be able to decide" who may enter the country. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Id*. 8 U.S.C. § 1225 provides a roadmap for that process.

When an alien presents themselves at the border of the United States, they are deemed an applicant for admission[5] and must be inspected by an immigration officer. § 1225(a)(1), (3). Inspection by an immigration officer lasts only "a few seconds" and requires the officer to "examine documents, run basic lookout queries, and ask pertinent questions to determine admissibility and issue relevant entry documents." Library of Congress, *Expedited Removal of Aliens: Legal Framework*, Inspection (October 8, 2019) https://www.congress.gov/crs-product/R45314#ifn84 (last visited June 23, 2026) (internal quotations omitted). If that immigration officer finds discrepancies in the alien's application or travel documents, the alien is referred to a secondary inspection for further determination on whether the alien is admissible. *Id*. An alien may be deemed inadmissible due to "fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287. If the alien is deemed inadmissible, the immigration officer will order the alien removed and placed into expedited removal proceedings. § 1225(b)(1)(A)(i); *see*

---

[5]     Pursuant to § 1225(a)(1), an applicant for admission is defined as "an alien present in the United States who has not been admitted or who arrives in the United States[.]"

*also* United States Department of Homeland Security, *I-860 Notice and Order of Expedited Removal: Determination of Inadmissibility*, Sample, https://www.ice.gov/doclib/detention/checkin/ER_I_860.pdf (last visited June 23, 2026).

However, if the alien indicates a fear of persecution or intent to apply for asylum, the immigration officer will refer the alien to an interview by an asylum officer. § 1225(b)(1)(A)(ii). This is often called a credible fear interview or credible fear screening. *See* U.S. Citizenship and Immigration Services ("USCIS"), *Questions and Answers: Credible Fear Screening*, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/questions-and-answers-credible-fear-screening (last accessed June 23, 2026). If that immigration officer determines that the alien has a credible fear of persecution, then the alien is detained and transferred from expedited to full removal proceedings for further consideration of his asylum claim. § 1225(b)(1)(B)(ii). Detention during this time is mandatory pending "further consideration of the application for asylum." *Id*.

### 2. Application to Qiu's case

Compare the above to the present case. Here, Petitioner entered the United States on November 14, 2024, near San Ysidro, California where he then encountered a border patrol officer. (Doc. # 4-1 at 1). Based on the record, Petitioner entered the United States by crossing the border through Mexico, rather than through an official port of entry. (*See* Doc. # 4-2 at 2) (noting that Petitioner "unlawfully entered the United States of America from Mexico, at a time and place other than designated by immigration officers of the United States."). Nevertheless, after encountering the border patrol officer, Petitioner must have been processed and deemed inadmissible because that same day

he was issued an I-860 Notice and Order of Expedited Removal. (Doc. # 4-1). The Notice indicates that Petitioner was deemed inadmissible due to his lack of valid entry documents. (*Id*. at 1). Accordingly, Petitioner was placed into expedited removal proceedings. (*Id*.). However, Petitioner must have indicated to the immigration officer that he intended to apply for asylum or had a fear of persecution because he was processed as "Expedited Removal with Credible Fear." (Doc. # 4-2 at 2). Petitioner was then paroled into the country.[6] (Doc. # 1-3). On October 29, 2025, Petitioner got a notice that his credible fear interview was scheduled for November 6, 2025 at 7:00 a.m. (Doc. # 1-5).

On November 6, 2025, Petitioner was detained following his credible fear interview. (Doc. # 4-2 at 2; *see also* Doc. # 6 at 1). As noted above, neither party has provided this Court with the outcome of the credible fear hearing. Indeed, in Qui's Petition and Reply, he does not address this factual issue at all. Respondents, however, state that they believe Petitioner was found to have a credible fear due to the fact that he was issued a NTA on February 9, 2026, which effectively placed Petitioner in full removal proceedings pursuant to § 240 of the INA. (*See* Doc. # 1-2). Petitioner, in his *pro se* letter to the Court indicated that he "passed his asylum interview." (Doc. # 6). The Court thus concludes that on November 6, 2025, Petitioner was detained by ICE after he was found to have a credible fear by the asylum officer. The Court makes this conclusion due to Petitioner's own statements, as well as the NTA that was issued after his credible fear

---

[6]     There is a discrepancy regarding how long Petitioner was paroled into the country. Petitioner's I-213 states that he was "released on Interim Parole pending an interview by an Asylum Officer." (Doc. # 4-2 at 2). However, Petitioner's Interim Notice Authorizing Parole states that Petitioner's "parole authorization is valid for one year" beginning December 9, 2024. (Doc. # 1-3).

interview.   *See* USCIS, *Questions and Answers: Credible Fear Screening* https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/questions-and-answers-credible-fear-screening (last accessed June 23, 2026) (if an asylum officer finds that an alien has a credible fear, they may either "retain and consider [the] application and also consider [the alien's] eligibility for withholding of removal" or, they may "[i]ssue a Notice to Appear before an IJ for consideration of [the alien's] asylum, withholding of removal, and CAT protection claims.")

Accordingly, Petitioner's asylum claim "is now being considered in the context of the 'full removal proceedings' that the government has initiated against him." *Brito-Goncalvez v. Field Office Director*, No. 1:26-cv-94, 2026 WL 1077448, at *3 (S.D. Oh. Apr. 21, 2026) (quoting *Matter of M-S*, 27 I&N Dec. 509, 515 (A.G. 2019)).   Therefore, Petitioner "shall be detained" until his asylum claim is adjudicated.  § 1225(b)(1)(B)(ii).

Numerous courts, including the Supreme Court in *Jennings*, have concluded that the plain reading of the phrase "shall be detained" in § 1225(b)(1)(B)(ii) requires mandatory detention of the noncitizen until their application for asylum has been fully adjudicated.  *See Jennings*, 583 U.S. at 599 ("The plain meaning of [§ 1225(b)(1)(B)(ii)] is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum"); *Pambukhchyan v. United States Immig. & Customs Enf't*, No. 26-0136, 2026 WL 980250, at *3 (W.D. La. Mar. 23, 2026) ("Plainly, Section 1225 does not authorize release on bond. . . . The language 'shall be detained' is clear."); *Paredes Padilla v. Galovich*, No. 25-cv-865-jdp, 2025 WL 3640960, at *3 (W.D. Wis. Dec. 16, 2025) (noting that *Jennings* "holds that once a non-citizen is transferred from expedited to full removal proceedings for consideration of an asylum claim, § 1225(b)(1)(B)(ii) mandates

9

detention for the duration of the asylum proceedings."); *Brito-Goncalvez*, 2026 WL 1077448, at *3 ("And under [§ 1225(b)(1)(B)(ii)], the government has the authority to, indeed is required to, detain [the petitioner.]"); *see also Matter of M-S*, 27 I&N at 515 (aliens transferred from expedited to full proceedings after establishing credible fear "remain ineligible for bond[.]").

Petitioner was transferred from expedited to full proceedings so that his asylum claim could be adjudicated. This occurred after the asylum officer determined that Petitioner had a credible fear on November 6, 2025. The conclusion that Petitioner was transferred to full proceedings is reinforced by the NTA that was issued on February 9, 2026. (Doc. # 1-2). As indicated by Petitioner's Automated Case Information, his asylum case is still pending. Therefore, Petitioner is subject to mandatory detention pursuant to § 1225(b)(1)(B)(ii).

### a. Petitioner's parole

Petitioner's Reply is convoluted, at best. He seems to argue three separate theories (1) he is entitled to a bond hearing pursuant to *Maldonado Bautista*; (2) Respondents improperly revoked his parole; and (3) he is entitled to a parole exception to § 1225(b)(1). (*See generally* Doc. # 5). Because this Court has concluded that Petitioner is being detained pursuant to § 1225(b)(1)(B)(ii), the relief he seeks pursuant to *Maldonado Bautista* is foreclosed. Therefore, the Court will address Petitioner's argument that Respondents improperly revoked his parole and he is entitled to a parole exception.

With respect to the parole exception to § 1225(b)(1)(B)(ii), the Court in *Jennings* held that an alien governed by § 1225(b)(1)(B)(ii) may "be temporarily released on

parole[.]" *Jennings*, 583 U.S. at 288; *see also Matter of M-S*, 27 I&N at 510 ("[U]nless paroled, an alien must be detained until his asylum claim is adjudicated."). When Petitioner entered this country, he was paroled in pursuant to 8 U.S.C. § 1182(d)(5)(A). Depending on which document the Court considers, Petitioner was either paroled for one year beginning December 9, 2024 (Doc. # 1-3) or paroled pending his credible fear interview (Doc. # 4-2). Either option leads the Court to the same conclusion—Petitioner is no longer entitled to parole. Either Petitioner's parole automatically expired on December 9, 2025, or Petitioner's parole expired on November 6, 2025, when the purpose of his parole—attending a credible fear interview—had been completed. There is nothing in the record that suggests that ICE granted Petitioner an extension of his parole. Therefore, because Petitioner is no longer on parole, the parole exception cannot possibly apply to him. *See Brito-Goncalvez*, 2026 WL 1077448, at *3 (concluding that the petitioner's one year parole into the country, which had since expired, did not change the fact that he was now mandatorily detained pursuant to § 1225(b)(1)(B)(ii)); *Paredes Padilla*, 2025 WL 3640960, at *3 (concluding that the petitioner was mandatorily detained pursuant to § 1225(b)(1)(B)(ii), despite his previous release on bond).

Petitioner additionally argues that his parole was improperly terminated because he received no prior notice of his parole termination. (Doc. # 5 at 4). While the record does not reflect any written notice terminating Petitioner's parole, and such a violation may be a due process violation, that has no bearing on the issue at hand. The present issue is whether Petitioner is being improperly detained—he is not. In fact, pursuant to § 1225(b)(1)(B)(ii), Respondents are *required* to detain Petitioner for the pendency of his

11

asylum proceedings.  Accordingly, Petitioner's parole does not impact the outcome that he is being properly detained pursuant to § 1225(b)(1)(B)(ii).

### 3. Due Process

Petitioner additionally alleges that his detention violates the Fifth Amendment right to due process.  (Doc. # 1 at 16-21).  Petitioner first argues that his "prolonged, indefinite detention under § 1225(b) violates the Fifth Amendment by depriving him of liberty without due process of law."  (*Id*. ¶ 40).

First, the Supreme Court has long "recognized detention during deportation proceedings as constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003).  Thus, the Court would reject any argument that general detention while Petitioner's asylum claim is pending is a violation of his due process rights. *See Brito-Goncalvez*, 2026 WL 1077448, at *5 ("So to the extent that [the petitioner] contends that the Court should conduct a non-duration based, free-standing due process inquiry into his detention under the balancing test from *Mathews v. Eldridge* . . . the Court struggles to see how that analysis squares with the Supreme Court's statements on this matter.").

With respect to Petitioner's argument that his due process rights are being violated due to his prolonged detention, the Court acknowledges that Petitioner has been detained nearly eight (8) months.  And certainly, if his "pre-removal detention goes on too long, due-process concerns may well arise." *Id*.  However, Petitioner's removal proceedings are still ongoing, and his master calendar hearing is scheduled for mere days from the date of this order.  Moreover, Petitioner's prolonged detention argument rests on the Supreme Court case *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  (*See* Doc. # 1 at 16-

20).  As Respondents have pointed out, Petitioner's reliance on *Zadvydas* is misplaced. *Zadvydas*, which concluded that detention is reasonable for a period of six months, involved detention under 8 U.S.C. § 1231(a).  533 U.S. at 701.  Petitioner, whose asylum proceedings are still ongoing, and who is not currently subject to a final order of removal, is not being detained pursuant to § 1231(a).  Should Petitioner be subject to a final order of removal, and his detention continues for a prolonged and indefinite amount of time, he may well have a due process claim at that time.  However, as it stands, Petitioner's current mandatory detention does not trigger constitutional concerns.

Additionally, Petitioner argues that his termination of parole without notice or opportunity to be heard, violates his due process rights.  (*Id*. ¶ 29).  Nothing in the record indicates that Petitioner was provided with written notice when his parole was revoked— a requirement under 8 C.F.R. 212.5(e).  However, since his initial conditional release on parole, Petitioner was on notice that his parole would terminate automatically on December 9, 2025, if he was not notified earlier of its revocation.  (*See* Doc. # 1-3). Moreover, Petitioner is currently subject to mandatory detention pursuant to § 1225(b)(1)(B)(ii).  Thus, under these specific circumstances it is not appropriate to grant a writ of habeas corpus.  Petitioner's parole was, at the very least, automatically revoked on December 9, 2025, and the Court concludes that he is currently subject to mandatory detention under § 1225(b)(1)(B)(ii).  Petitioner's requested relief of immediate release is not only infeasible but would do nothing to redress the harm he faced when his parole was revoked without notice.

13

## IV.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1)   Qui's Petition for Writ of Habeas Corpus (Doc. # 1) is **DENIED**;

(2)   This matter is hereby **DISMISSED** and **STRICKEN** from the Court's active

docket.

This 24th day of June, 2026.



Signed By:

David L. Bunning

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-199 MOO re habeas petition.docx